**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **MARCH 27, 2008**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

In Re:

GARY and CHERYL MCDERMOTT,

Debtors.

Case No.:   05-17387 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Goldstein Isaccson, PC
Thomas A. Waldman, Esq.
100 Morris Avenue, Third Floor
Springfield, New Jersey 07081
*Counsel for Nancy Isaacson, Chapter 7 Trustee*


Gary & Cheryl McDermott
21 Jacobs Lane
Scotch Plains, New Jersey 07076
*Debtors Appearing Pro Se*


Ansell Zaro Grimm & Aaron
James Aaron, Esq.
1500 Lawrence Avenue
Ocean, New Jersey 07712
*Counsel for Commerce Bank, N.A.*


Law Offices of John V. McDermott, Jr.
Vernon Professional Center
P.O. Box 859
521 Route 515
Vernon, New Jersey 07462
*Former Special Counsel for Nancy Isaacson,*
*Chapter 7 Trustee, and the Debtors*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion to approve a settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 filed by Nancy Isaacson, Chapter 7 Trustee ("Trustee") for Gary and Cheryl McDermott (hereinafter collectively referred to as "Debtors"). The settlement proposes to resolve the Debtors' claims against and provide releases to Defendants Appalachian Management Group ("AMG"), Jim Lee ("Lee") and Roland Vines ("Vines") (collectively referred to as "AMG Parties")[1] in *McDermott v. Appalachian Management Group, Inc. et al.*, Docket No. UNN-L-2593-04, Superior Court of New Jersey, Law Division, Union County ("State Court Action"). The Debtors filed opposition to the settlement *pro se* attaching affidavits previously filed in this Court and the Trustee filed a letter reply.

The Court heard oral argument on March 18, 2008 and takes notice that prior to the hearing there was neither a certification in opposition filed nor an appearance from Debtors' counsel. Thereafter, the Court received a letter from John V. McDermott, Jr.[2], former Special Counsel to the Trustee and the Debtors in the State Court Action submitting that the settlement should not be approved because it is not in the best interests of the Debtors, secured creditors or the estate. In response, counsel for the Trustee submitted a certification detailing the Trustee's due diligence efforts in reaching the determination that the assets pledged for this settlement by the AMG Parties constitute substantially all of AMG's available assets. The Trustee further maintains that the potential indemnification and setoffs between AMG and Stericyle are insignificant. Counsel for the

---

[1] The entities collectively referred to as the "Released Parties" in the proposed Settlement Agreement constitute the following: AMG; any and all subsidiaries and affiliates of AMG; AMG-Med Tec, Inc.; AMG-Medical Waste Services, Inc.; William Fred Bonham; James Egan; Rocio Fermin; Bio Med Tec, Inc.; Bio Medical Waste Services, Inc.; Jimmie D. Lee; Jimmie D. Lee, CPA; Jeffrey Castro; Roland Vines; David Financial, LLC; and all members, past and present, of Davis Financial, LLC.

[2] John V. McDermott, Jr. is the brother of Gary McDermott in addition to being the Debtors' State Court Action counsel and former counsel to the Chapter 7 Trustee.

AMG Parties also filed a letter in support of approving the settlement reciting the factual and legal complexity of the state court action as evidenced by the State Court's denial of partial summary judgment.

For the reasons stated hereafter, the Trustee's motion to approve a settlement of the pending State Court Action is granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. As these matters concern the administration of the bankruptcy estate and relate to the allowance, disallowance and determination of claims against the estate, they constitute core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## Statement of Facts and Procedural History

**A.    Background**

The Debtors owned Mac Healthcare, Inc. ("Mac Healthcare"), a waste management business, from 1996 to November 2003, when Appalachian Management Group, Inc. acquired the stock of Mac Healthcare. *Debtors' Opp.*, Exhibit B (Cert. of Gary McDermott in Opposition to Commerce Bank Motion to Vacate the Automatic Stay to Proceed to Sheriff's Sale) at ¶ 3. At this time, Debtor Gary McDermott acquired ten percent (10%) AMG stock and a five-year employment contract to continue the business. *Id.* During the time of the Debtors' ownership, Mac Healthcare had a line of credit with Commerce Bank, N.A. ("Commerce") secured by the receivables of Mac Healthcare. *Id.* at ¶ 4. The Debtors personally guaranteed this obligation with their home in Scotch Plains, New Jersey. The arrangement with Commerce was contingent upon the depositing of all receivables of Mac Healthcare and subsequently AMG into the account at Commerce. *Id.* at ¶ 5. AMG terminated

4

the both Debtors' employment in late spring 2004 without notice and allegedly in breach of the employment contract. *Id.* at ¶ 4. At such time, Debtor Gary McDermott submits that the $500,000 in receivables was sufficient to cover the line of credit. However, no deposits of receivables were made by AMG. *Id.* at ¶ 6.

On July 19, 2004, the Debtors commenced the pending State Court Action alleging, *inter alia*, fraud, mismanagement, misappropriation of assets, breach of contract, embezzlement, Uniform Fraudulent Transfer Act violations, conversion of corporate assets, piercing the corporate veil and civil RICO. *Id.* at ¶ 7; Exhibit C at ¶ 9. During a state court hearing in August 2004, the Debtors sought the appointment of a receiver to control Mac Healthcare instead of AMG. Commerce did not join in this request. *Id.* at ¶ 9. The Court continued AMG's control and ordered AMG to open a Commerce account for deposit of the receivables. *Id.* at Exhibit B, ¶ 9; Exhibit C (Certification of John V. McDermott, Jr., Esq. In Support of Debtors' Opposition to Commerce Bank Motion to Vacate the Automatic Stay to Proceed to Sheriff's Sale). However, AMG did not deposit the receivables as ordered. *Id.* at Exhibit B, ¶ 9. As of May 2007, the Debtors submit that the aggregate mortgages on their personal residence were $413,309.00. *Id.* at Exhibit A (Supplemental Certification of Gary McDermott in Opposition to Commerce Bank Motion to Vacate the Automatic Stay to Proceed to Sheriff's Sale), ¶ 3. The Debtors allege that their efforts to keep their first and second mortgage payments current have benefitted Commerce because the principal on both mortgages has decreased improving Commerce's position. *Id.* at Exhibit B, ¶ 10.

On March 11, 2005, the Debtors filed a voluntary chapter 7 petition and Nancy Isaacson was appointed as the Chapter 7 Trustee. At that time, John V. McDermott, Jr., Esq., counsel for the Debtors in the pending state court litigation against AMG and the other affiliated parties, was

5

appointed as Special Counsel to the Trustee for the same litigation (hereinafter "Special Counsel"). *Id.* at Exhibit C, ¶ 3. In May 2007, Commerce filed a motion for stay relief to allow for a Sheriff's sale of the Debtors' personal residence in Scotch Plains, New Jersey. The Debtors and the Trustee's Special Counsel filed certifications in opposition, from which much of the above factual recitation has been gleaned. The Trustee's Special Counsel detailed his litigation efforts in the State Court Action as follows: (i) the Special Counsel amended the State Court Complaint to add approximately twelve counts and eight defendants; (ii) approximately seventeen depositions have taken place; (iii) approximately 20,000 pages of documents were obtained; (iv) approximately twenty additional deposition and document subpoenas have been served; and (v) a partial summary judgment motion was returnable on June 8, 2007 addressing, *inter alia*, the Debtors' claims against AMG for breach of employment contract and breach of sale contract. *Id.* at ¶¶ 4-8.

In addition, the Trustee's Special Counsel's certification further detailed the events that transpired whereby the AMG Parties purchased the Debtors' company. The Debtors contend that the Defendants sold the corporate property and equipment, misappropriated the proceeds of such sale, and failed to pay the corporate debts or the Debtors. *Id.* at ¶ 10. The remaining assets were sold to Stericycle, Inc. for approximately $6 million. *Id.* At the time of the Certification, the AMG Parties were still owed approximately $3 million on that sale and the Special Counsel requested that the Court order the sums to be paid into the court to satisfy the Debtors' claims through the partial summary judgment motion. *Id.* The failure of the AMG Parties to make monthly payments to Commerce Bank, in conjunction with the sale contract, and to satisfy the outstanding line of credit resulted in the August 2004 State Court Order to open the new bank account for the accounts receivables deposits, with which the AMG Parties have failed to comply. *Id.* at ¶¶ 11-12. The

Special Counsel further certified that deposition testimony revealed that the former president of AMG used corporate funds to satisfy personal obligations. *Id.* at ¶ 13. Once this was unearthed, the former president was forced to give up his stock ownership in exchange for a $100,000 payment and his departure from the company. *Id.* At the time, the Special Counsel maintained an expectation to succeed on the partial summary judgment motion, which would result in a judgment and recovery in excess of the amounts due to Commerce. *Id.* at ¶ 14. In the alternative, it was the Special Counsel's belief that a trial could take place within six months. *Id.* The Special Counsel submitted that a Sheriff's sale would yield less than the amounts due to Commerce particularly given the real estate climate in New Jersey in 2007. *Id.*

**B.    Trustee's Motion to Approve Settlement**

The instant motion of the Trustee to approve a settlement resolving the State Court Action is based upon the above factual recitation. The State Court Action currently is ready and scheduled for trial if the settlement is not approved.[3] *Trustee's Motion to Approve Settlement ("Trustee's Mot.")* at ¶ 6. The Trustee submits that she and the principal State Court Defendants, Appalachian Mountain Group, Jim Lee and Roland Vines (hereinafter "Settling Defendants") have fully executed a Settlement Agreement. *Id.* at ¶ 7. The Settlement Agreement specifically provides for the following: (i) Lee and Vines will pay $175,000.00 to the Trustee and will release one of two Mac Healthcare computers to the Trustee or her agent; (ii) Lee will assign his rights with respect to Stericyle, Inc. to the Trustee; (iii) the AMG Parties will release the Trustee and the Debtors' bankruptcy estate of any obligations, claims, or causes of action; and (iv) the Trustee will release her claims against the AMG Parties. *Id.* at ¶ 8; Exhibit A. In sum, under the Settlement Agreement,

---

[3]John V. McDermott, counsel in the State Court Action, has advised he is prepared and ready to go to trial.

the Debtors' estate will receive certain payments and assignment of rights valued at approximately $930,715.00 in exchange for the dismissal of the State Court Action. *Id.* at ¶ 8. The Trustee submits that in her legal and business judgment, the Settlement Agreement provides the best recovery for the estate as continued litigation would be lengthy with neither guarantee of success nor collectibility of a judgment. *Id.* at ¶ 12.

In opposition, the Debtors contend there is uncertainty as to the amount the Trustee will actually garner through this Settlement due to the fact that potential setoffs exist, which may result in the AMG Parties paying anywhere between $175,000.00 to $930,715.00. *See Debtors' Opp.* The Debtors further submit that the AMG Parties and Settling Defendants have failed to comply with previous contractual arrangements and court orders, thus, giving rise to their objection. *Id.* The Debtors also provide the following facts in support of their objection and argue that these facts may result in a reduced amount available to satisfy the proposed Settlement: (i) $50,000.00 is past due by the Settling Defendants for the representation of Fred Bonham when he was forced out of the president position at AMG and this amount could potentially be paid out of the $100,000.00 to be paid to the Glick trust account, which has not been included in the settlement documentation; (ii) $685,715.00 of the proposed Settlement is to be paid by Stericycle from the sale by AMG, however, this money is subject to offsets and indemnification claims by Stericycle; (iii) AMG has failed to provide an accounting of the $3.5 million sale proceeds and the Debtors have not yet received a distribution from such sale; (iv) pending litigation between Stericycle and Daniels, a Defendant in another litigation between Mac Healthcare and AMG, resulting from the AMG sale to Stericycle, could result in the a forfeiture of funds to satisfy the pending litigation; (v) the proposed Settlement Agreement totals only $860,429.00 thus raising question as to the source of the

8

remaining $70,286.00 to be paid; and (vi) the legal and Trustee's fees could result in no disbursement to the Debtors or to creditors as only $150,000.00 is guaranteed in the proposed settlement. *Id.*

The Debtors additionally submit that the proposed settlement makes Mac Healthcare's unpaid obligations the responsibility of the Debtors. Such obligations total approximately $853,000.00 consisting of the Commerce credit line and unpaid taxes to the Internal Revenue Service and the State of New Jersey. *Id.* Lastly, the Debtors maintain that they would support the Trustee's settlement if the entire $935,000.00 value was guaranteed even though they hold the belief that their lawsuit could obtain in excess of $3 million. *Id.* The Debtors argue that they would rather proceed to trial than consent to a proposed settlement that guarantees only $175,000.00. *Id.*

The Trustee submitted a letter reply indicating that the Trustee met and conferred with the Debtors and their counsel to disclose the terms of the proposed settlement. Subsequent to the January 21, 2008 meeting, at the request of the Debtors, the Trustee re-opened the settlement negotiations to increase the value of the settlement that the Trustee obtained on the contingency that the Debtors do not oppose the Trustee's application to approve such settlement. The Trustee submits that the Debtors have acted against the agreed upon arrangement and filed their *pro se* opposition without providing any legal basis to demonstrate that the Trustee's proposed settlement should not be approved.

Commerce Bank submitted a letter attaching a settlement agreement between the Debtors and Commerce with respect to a mortgage foreclosure. In accordance with that settlement filed with the State Court on November 13, 2007, the Debtors would pay Commerce $275,000.00 in exchange for dismissal of the foreclosure action without prejudice and the mortgage amount would be reduced

9

to $100,000.00 to be paid within two years from the date of the settlement agreement with Commerce obtaining a third mortgage on the Scotch Plains residence. In addition, Commerce would have a $491,377.75 unsecured claim in the Debtors' bankruptcy that would receive its pro rata share from the anticipated settlement or money judgment obtained in the State Court Action, which sum would be credited against the $100,000.00 due to Commerce under the mortgage. If the pro rata share was less than $100,000.00, then the Debtors would be responsible for the difference. Furthermore, the Debtors agreed to sell the secured assets of Mac Healthcare, Inc. and turn over the sale proceeds to Commerce whereby $50,000.00 would be credited against Commerce's unsecured claim, not the $100,000.00 mortgage.

## Discussion

Federal Rule of Bankruptcy Procedure 9019 governs compromises to which a trustee in bankruptcy is a party. A bankruptcy court may approve a compromise or settlement on motion of a trustee after notice and hearing as provided in Federal Rule of Bankruptcy Procedure 2002. FED. R. BANKR. P. 9019(a). A trustee bears the burden to show that a proposed settlement is in the best interests of the estate and the debtor. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 804 (E.D. Pa. 1986) ("[T]o meet its burden the trustee must establish that the proposed compromise is in the best interests of the estate. In this case, the trustee has not presented sufficient evidence for a court to conclude that the compromise is in the [debtor's] best interest."). In assessing the best interest to the debtor, the Court must look to the consideration for settlement. *Id.* This analysis pits the value of rights relinquished by the debtor versus the value received in return. *Id.* In determining whether to approve a proposed settlement, a court is permitted to "'take judicial notice of the record

in prior related proceedings, and draw reasonable inferences therefrom.'" *Id.* at 802 (citation omitted); *see* FED. R. EVID. 201.

Approval of a compromise under Rule 9019 is within the discretion of the bankruptcy court. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803. However, a court cannot sustain an objection to the settlement while granting the motion to approve the settlement. *See generally ReGen Capital III, Inc. v. Official Comm. of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662, 666-68 (B.A.P. 8th Cir. 2002). "In so doing, the court changes the essential terms of the proposed settlement and violates the purpose and spirit of Federal Rule of Bankruptcy Procedure 9019 or decides issues not necessary . . . ." *Id.* at 667. Instead, the court's limited role is to determine whether the settlement should be approved or disapproved as proposed. *See generally id.* at 662.

"To minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *In re Martin*, 91 F.3d at 393 (citing 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)). A Court must carefully examine a proposed settlement in considering whether to approve it. *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (citing *see In re Martin*, 91 F.3d at 393 (other citation omitted)). In determining whether to approve a settlement, the court must analyze:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*In re Martin*, 91 F.3d at 393 (citing *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803); *see In re Nutraquest, Inc.*, 434 F.3d at 644 (quoting *In re Martin*, 91 F.3d at 393).

Furthermore, the Third Circuit has found that:

> In determining whether to approve the trustee's application to settle a controversy, the Bankruptcy Court does not substitute its judgment for that of the trustee. 'Nor is the court 'to decide the numerous questions of law and fact raised by [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness."

*In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803 (citations omitted).

"It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation." *In re Nutraquest, Inc.*, 434 F.3d at 646 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968) (superseded by statute on other grounds) ("Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation.")). Balancing the complexity and delay of litigation with the benefits of settlement is part in parcel of the probability-of-success-in-litigation factor. *In re Nutraquest, Inc.*, 434 F.3d at 646 (citation omitted).

In the instant matter, the Trustee submits that the *Martin* factors are satisfied in seeking approval of the proposed settlement. The Trustee argues that the complexity of the underlying State Court Action would result in lengthy litigation and a trial exhausting funds that would otherwise be available to the creditors. The Trustee points out that the judgment must be in excess of $1 million for any recovery by the unsecured creditors. Furthermore, administration costs will likely consume any potential recovery by the unsecured creditors unless the recovery is well in excess of $1 million.

The Trustee further contends that the probability of success and the ability to collect on a judgment in the State Court Action are very problematic. Specifically, the Defendants are Florida residents and the ability to collect on any judgment there is unlikely. Essentially, any further litigation, instead of implementing the proposed settlement, would extend the length of the Debtors'

bankruptcy case considerably with little assurance of an unsecured creditor recovery. Additionally, at oral argument, the Debtors voiced concerns of setoff, but the Trustee argues she expects the full value of the Notes to be received concluding that any indemnification or setoff will be insignificant. In opposition, the Debtors and Commerce Bank raise the issue of whether the Trustee's proposed settlement promotes the interests of the creditors as it results in a shortfall in the amount owed to Commerce. Although this may be the case, the Trustee has sufficiently demonstrated the obstacles she and this estate face to exact a recovery through the trial process in the State Court.

This Court finds that a balancing of the *Martin* factors weighs in support of approval of the Trustee's proposed settlement. The Trustee has undertaken extensive due diligence and factored this in evaluating the probability of success. The complexity of the trial issues are real and there is no guarantee of a favorable outcome on the merits. In addition, serious issues as to collectibility of any money judgment exist. Thus, this Court finds the Trustee has met her burden of demonstrating to this Court that the proposed settlement of the State Court Action is in the best interest of the creditors and the estate.

## **Conclusion**

For the foregoing reasons, the Trustee's motion to approve her settlement with the AMG Parties resolving the underlying State Court Action is hereby granted.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

/s/ *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: March 27, 2008