**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

AUGUST 24, 2009

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY
```

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

In Re:

**GARY McDERMOTT and
CHERYL McDERMOTT,**

                    Debtors.

Case No.:   05-17387 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

John V. McDermott, Jr., Esq.
14 Church Street
Vernon, New Jersey 07462
*Applicant and Special Counsel to the Trustee*

Nancy Isaacson, Esq.
Greenbaum Rowe Smith & Davis Llp
75 Livingston Ave.
Roseland, NJ  07068-3701
*Chapter 7 Trustee*

Greenbaum Rowe Smith & Davis Llp
Thomas A. Waldman, Esq.
 75 Livingston Ave.
Roseland, NJ  07068-3701
*Counsel for the Chapter 7 Trustee*

Rabinowitz, Lubetkin & Tully, L.L.C.
Mary Ellen Tully, Esq.
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
*Counsel for Debtors*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the fee application filed by John V. McDermott, Jr. ("Attorney") for professional services rendered as Former Special Counsel to Nancy Isaacson, Chapter 7 Trustee ("Trustee") for Gary and Cheryl McDermott. In addition to $440,138.50 in fees calculated at an hourly rate of $265.00 for 1660.90 hours, the Attorney is requesting reimbursement of $34,420.81 for expenses incurred, as well as a bonus of ten percent (10%) of the $440,138.50 fee. The application is opposed by the Trustee.

**Statement of Facts and Procedural History**

On March 11, 2005 ("Petition Date"), Gary and Cheryl McDermott ("Debtors") filed a voluntary Chapter 7 petition. *Chapter 7 Trustee's Verified Objection to Former Special Counsel John V. Mc Dermott, Jr., Esq.'s Fee Application (Tr. Obj.)* at ¶3. As of the Petition Date, the Debtors' bankruptcy estate included the Debtors' civil claims in *Gary A. McDermott and Cheryl B. McDermott v. Appalachian Management Group, Inc, et. al*, Docket No. UNN-L2593-04 ("State Court Action"), which they filed in the Superior Court of New Jersey, Law Division, Union County, on July 19, 2004. *Id*. at¶ 1; *First Application of John V. McDermott, Jr., Former Special Counsel to Trustee, for Compensation for Services Rendered and Reimbursement of Expenses ("Att'y First App.")* at ¶3. John V. McDermott, brother of the Debtor Gary A. McDermott, represented the Debtors in the State Court Action prior to the Chapter 7 filing. *Tr. Obj*. at ¶6; *Certification of Attorney ("Att'y Cert.")* at ¶4. After speaking with the Debtors and their bankruptcy counsel, the Trustee concluded that the State Court Action was worth pursuing and, as the Debtors expressed their satisfaction with the Attorney's representation, contacted the Attorney in early June, 2005. *Tr. Obj.* at ¶¶6, 7.

During their initial conversation, the Attorney informed the Trustee that he had been representing the Debtors on an hourly fee basis, and that he would continue his representation according to the same arrangement. *Att'y Cert.* at ¶4. While the Trustee allegedly agreed to this proposition, she pointed out that there were no funds in the Debtors' bankruptcy estate and that the Attorney's payment of the hourly rate would be possible only if "recovery was made." *Id.* Additionally, it is alleged the Trustee offered the Attorney a bonus "over and above the hourly rate" if substantial recovery was made in the State Court Action, but which would be "completely contingent upon recovery." *Id.*

The Trustee, however, asserts that during the initial conversation she made it clear to the Attorney that his retention could only be on a contingency fee basis since there were no funds in the Debtors' estate and that the Attorney indicated his understanding of the contingent nature of the arrangement. *Tr. Obj.* at ¶7. The Trustee came away from the conversation with the belief that the agreement with the Attorney with respect to the State Court Action was on a contingency fee basis. *Id.*

On June 14, 2005, the Attorney wrote a letter to the Trustee, asserting that he would continue to represent the Debtors at the hourly rate of $265.00, and expressing his understanding that he would "only be paid the hourly rate in the event that recovery is made." *Att'y Cert.* at ¶4, Ex. A. The letter also stated that the Attorney "was not willing to put out moneys to pay the expenses of the litigation if [he] was not going to be paid the hourly rate as the services were performed. Therefore, [he requested to] have the expenses for the same paid as the expenses were incurred." *Id.* In her June 16, 2005 response letter, the Trustee stated that there was a misunderstanding and emphasized that, because there was no money in the estate, if the Attorney agreed to take the case,

4

it would "be as a complete contingency, with all costs advanced by [the Attorney]." *Att'y Cert.* at Ex. B; *Tr. Obj.* at ¶8, Ex. B.

On July 11, 2005, the Attorney sent the Trustee a letter agreeing to the Trustee's June 16 letter with the provision that the Trustee liquidate certain assets to create a fund from which to advance Attorney's costs and disbursements associated with the State Court Action. *Att'y Cert.* at ¶6, Ex. C; *Tr. Obj.* at ¶9. "Other than this change and contingency[,]" the Attorney understood that he would be working pursuant to the contents of his June 14 letter to the Trustee. *Id.* In this July 11 letter, the Attorney also requested that the Trustee prepare the retention papers as quickly as possible so that he could proceed with the State Court Action. *Id.* The Trustee submitted her Application for Retention of Professional and the Court entered the Order as requested on September 19, 2005. *Att'y Cert.* at ¶11, Ex. H; *Tr. Obj.* at ¶10.

The State Court Action ultimately settled for $935,000, which was approved by the Court on March 27, 2008. *Att'y Cert.* at ¶13; *Tr. Obj.* at ¶¶18, 21, Ex. I. While the Attorney maintained that the settlement was inadequate and objected to its approval, the Trustee outlined a history of the deteriorating relationship between the Trustee and Attorney and asserted that the settlement was the proper course to take. *Att'y Cert.* at ¶19; see *Tr. Obj.* at ¶¶20, 22. As an example of their strained relationship, the Trustee points to the sporadic nature of the Attorney's contacts with her over the course of the State Court Action. *Tr. Obj.* at ¶14. In particular, the Attorney failed to provide monthly status and progress reports, which the Trustee explicitly instructed him to do during a private meeting and subsequent telephone conversations. *Id.*

As the State Court Action progressed, the Trustee began to doubt the merits of the case and the Attorney's ability to handle the complex litigation. *Tr. Obj.* at ¶15. These doubts were partially

raised by the Attorney's failure to provide the Trustee with his summary judgment motion papers in advance of filing them, by the Trustee's review of these papers, by her observation of his argument at the motion hearing, and by her attendance at the case management conference held thereafter. *Id*. at ¶¶15, 16. Moreover, the Trustee states she continued losing confidence in the Attorney's theories of recovery when he failed to provide satisfactory responses to her analyses and questions. *Id.* at ¶17. As a result of this deteriorating relationship, the Trustee commenced negotiations with counsel for the lead defendants in the State Court Action. *Id.* By December 2007, the Trustee reached a tentative agreement with the lead defendants whereby the bankruptcy estate "would receive all of the assets of the primary corporate defendant." *Id.* at ¶18. Although the Attorney objected to this tentative settlement, after discussing with him the claims, facts, legal theories, and the likelihood of success of the State Court Action beyond the value of the settlement, the Trustee remained convinced that the settlement was in the estate's best interests. *Id*.

On or about February 11, 2008, after the details of the proposed State Court Action settlement were finalized, the Trustee filed an application with this Court for approval of the settlement. *Id*. at ¶19. Concurrent with this filing, the Attorney sent the Trustee a copy of his invoice, which indicated that he worked on the State Court Action at an hourly rate, and which included hours he worked prior to his retention as Special Counsel. *Id*. Following an exchange of correspondence, the Trustee's counsel terminated the Trustee's attorney-client relationship with the Attorney on February 20, 2008. *Id.*

On March 18, 2008, the Court held a hearing on the Trustee's application for approval of the State Court Action settlement. The Attorney did not appear at the hearing to object before the Court, but did, after the hearing, submit a letter to the Court objecting to the settlement, which he

6

characterized as "grossly inadequate." *Id.* at ¶20. This letter also stated that the Attorney was retained by the Trustee "on the basis of an hourly fee of $265.00." *Id.* at Ex. H. After the Court scheduled a telephone conference with the Trustee and the Attorney because of the letter in opposition, the application to approve the settlement was approved by a Court order and an accompanying opinion issued on March 27, 2008. *Id.* at ¶¶20, 21. No appeal from that Order was taken.

The Attorney in the fee application alleges that without his efforts, the $935,000 settlement would not have materialized. *Att'y Cert.* ¶19. In particular, he indicates that the case was especially difficult not only because it involved issues of "complex fraud, fraudulent transfer, theft and civil RICO[,]" but also because the alleged wrongful actions took place in different states and were skillfully hidden by the wealthy and intelligent defendants. *Id.* at ¶16. Consequently, over its approximately four (4) year span, the case required numerous interrogatories, document requests, subpoenas for documents and depositions, as well as reviews of third party bank files, state agencies, and customers. *Id.* at ¶17.

The Attorney certifies that the fees he seeks are strictly for his services, that he does not have a paralegal, and that the requested fees are not "being paid to any other attorney, paralegal, secretary or anyone else." *Id.* at ¶22. The requested expenses "are customarily charged of all [the Attorney's] non-bankruptcy clients[, and] are limited to actual costs that have been advanced." *Id.* at ¶¶23, 24.

**Discussion**

In New Jersey, the "polestar of [contract] construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety[.]" *Conway v. 287 Corp. Ctr. Associates*, 187 N.J. 259, 269, 901 A.2d 341, 347 (2006). However, in discerning the parties' intent, the words of the contract alone will not always control since the situation of the parties, the attendant circumstances, including those leading up to the formation of the contract, the objectives the parties were striving to attain, custom, usage, and the parties' conduct must also be regarded. *Id.* In addition to negotiations between the contracting lawyer and client prior to the contract formation, their subsequent conduct is admissible to shed light on their mutual intent. *Jersey Land & Dev. Corp. v. United States*, 342 F. Supp. 48, 53 (D.N.J. 1972).

In *Conway v. 287 Corp. Ctr. Associates*, the lawyer and client entered into a written agreement whereby the lawyer would be entitled to a bonus if he procured a modification of the zone change that would allow the client to construct any type of residential or commercial structure, or lease or sell the property. 901 A.2d at 347. While the retainer agreement did not state that the lawyer's bonus would be contingent upon his procurement of access to a particular road, the client asserted that this was indeed their intent when entering the agreement and refused to pay the lawyer the bonus for procuring the zoning modification. *Id.* at 344. At issue before the Supreme Court of New Jersey was whether the parol evidence rule barred the client from bringing extrinsic evidence to explain the retainer agreement even though the agreement appeared to be unambiguous. *Id.* at 342. The court held that the parol evidence rule does not prohibit a party from elucidating the intent of the contracting parties even though the terms are facially unambiguous. Observing that (1) the lawyer sought "reasonable access" to the road in his complaint and during mediation, and (2) stated

8

in a status memo, to the lawyer taking over the case, that settlement means gaining access to the road, the court held that the evidence presented at trial established the parties' intent that the bonus be contingent upon procurement of road access. *Id*. at 348. Thus, the seemingly unambiguous language in the case at bar should be considered in a larger context, including the understanding of the parties.

In the present case, the retention documents (Attorney's Certification in Support of Application for Retention and the Trustee's Application for Retention) that were approved by the Court indicate that the Attorney would be compensated on a contingency basis "per the agreement attached to the Application as Exhibit A." The attached Exhibit A agreement, however, states that the Attorney is to be compensated at an hourly rate of $265.00. Thus, the documents are ambiguous as to whether the arrangement was one of contingency or otherwise. Even if the agreement was unambiguous, as *Conway* and *Jersey Land & Dev. Corp.* illustrate, evidence of all the circumstances surrounding the contracting process, as well as the parties' conduct following the contract formation, are to be considered in interpreting the parties' intent.

The Trustee apparently intended the Attorney to be compensated pursuant to the Attorney's agreement with the Debtors because the Trustee prepared the Attorney's Certification in Support of Application that states that the Attorney will be compensated pursuant to Application in Exhibit A, i.e., the original Attorney-Debtor agreement. The Trustee alleges that after her early June telephone conversation with the Attorney she was under the impression that this Attorney-Debtor agreement was on a contingency basis. However, the Trustee's and Attorney's subsequent correspondence and actions must also be considered.

9

The Attorney sent the Trustee a letter on June 14, in which he: (1) requested to be "paid an hourly rate [of $265.00]. . .but [understood] that [he would] only be paid the hourly rate in the event that there is a recovery made[.]"

In her June 16 letter, the Trustee emphasized that there was a misunderstanding during the earlier telephone discussion. However, it is unclear what the misunderstanding was. While the Trustee's letter stated that if the Attorney "agree[d] to take the case, it [would be] as a complete contingency[,]" the language of the letter, taken as a whole, seems to speak to the issue of paying litigation expenses as they are performed, and not to the issue of paying the Attorney an hourly fee only if there was a recovery in the State Court Action. Indeed, the Trustee's concern in her letter is that "there is presently no money in the bankruptcy estate to pay any costs with the litigation[, and t]herefore if [the Attorney] agree[d] to take the case, it [would be] as a complete contingency with costs being advanced by [the Attorney]." Thus, the Trustee appears to have used the term "complete contingency" in its vernacular, non-legal form to indicate that the Attorney could not be paid during the course of the litigation because funds were not available, and not to object to the Attorney's request for an hourly fee, which would depend upon recovery from the litigation.

Significantly, the pleadings submitted to Court, by both the Trustee and the Attorney, do not set forth a contingency percentage. If the Trustee intended the "complete contingency" language to mean that the Attorney's payment will be based on a traditional contingency fee arrangement, with the Attorney being paid a stated percentage of the recovery amount, the parties' submissions should have reflected that fact.

Generally, New Jersey courts will construe an agreement between a lawyer and client as a reasonable person in the circumstances of the client would construe it, i.e., against the lawyer.

*Cohen v. Radio-Electronics Officers Union*, 146 N.J. 140, 156, 679 A.2d 1188, 1196 (N.J. 1996). The reasons for interpreting client-lawyer fee agreements against the attorney are that (1) lawyers are usually the ones to write such agreements and, traditionally, an agreement is interpreted against the drafter, (2) lawyers are better suited than the clients to detect and repair omissions or mistakes, and (3) lawyers have a fiduciary duty to inform clients of the risks of the representation, "including those unresolved by the client-lawyer agreement." *Id*. In applying this axiom, the courts must consider the parties' "past practices and agreements, the extent to which they actually negotiated the agreement, and the client's level of sophistication or experience in retaining and compensating lawyers." *Id*. at 1198. Because sophisticated clients, who bargain with their lawyers, are less susceptible to the lawyer's overreaching, they do not need as much protection of the fiduciary relationship with their lawyers. *See id.* at 1199.

In the present case, the policies behind interpreting an agreement against the lawyer are not well-served. First, it was not the Attorney, but the Trustee, who drafted the Attorney's Certification in Support of Application for Retention and the Trustee's Application for Retention. Thus, the principle of interpreting the contract against the Attorney as the drafter is inapplicable. Second, the Trustee is a sophisticated attorney, who has experience in retaining and compensating lawyers in bankruptcy cases, and who engaged in a substantial negotiation process with this particular Attorney. Finally, because the Trustee had the relevant expertise, it is unlikely that she was subjected to the Attorney's overreaching; indeed, the Trustee openly opposed the Attorney's terms when they were unsatisfactory to her. Therefore, the mere fact that the agreement was ambiguous on its face does not warrant an interpretation against the Attorney and in the Trustee's favor.

Based on the above analysis, the Court finds that the fee arrangement between the Trustee and the Attorney approved by this Court was for an hourly rate with payment based on the contingency of recovery from the State Court Action. That is, if there was no recovery from that litigation, there would be no award of attorney's fees even if other assets were discovered by the Trustee. The Attorney's fees would be limited to the proceeds of recovery from the State Court Action; here, the proceeds of the settlement of that litigation, and they would be paid on an hourly rate basis subject, of course, to the requirements of 11 U.S.C. § 330 and the overriding requirement of reasonableness for actual and necessary services performed by the Attorney.

### **Fee Application Review**

The Bankruptcy Code provides the standard for reviewing and awarding compensation to professionals in a bankruptcy case. Section 330(a)(1) of the Code provides:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

The bankruptcy court maintains independent authority and responsibility to review fee applications for the reasonableness of compensation. *In re Busy Beaver Bldg. Ctrs. Inc.*, 19 F.3d 833, 842-43 (3d Cir. 1994); *see also Comm. of Eq. Sec. Holders v. Off. Comm. of Unsecured Creditors (In re Federal Mogul-Global, Inc.)*, 348 F.3d 390, 396-97 (3d Cir. 2003). Reasonableness

of compensation should be considered in light of the tangible benefits the fee applicant has conferred upon the estate as well as the creditors, determination for which is left to the sound discretion of the court. *See* 11 U.S.C. § 330(a)(2) & (3); *In re Int'l Coins & Currency, Inc.*, 23 B.R. 814, 816 (Bankr. D. Vt. 1982) (citation omitted); *In re Zenith Labs., Inc.*, 119 B.R. 51, 54 (Bankr. D.N.J. 1990). The fee applicant maintains the burden of proving that "it has earned the fees it requests, and that the fees are reasonable." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995)(citation omitted).

In addition to a finding of reasonableness, the majority of courts have determined the "necessity" of particular services from the posture of events at the time that the services were rendered, rather than based on hindsight after the services were performed. *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000), *abrogated on other grounds*, *Lamie v. United States Trustee*, 124 S. Ct. 1023 (2004); *Zolfo Cooper & Co.*, 50 F.3d at 261; *2 Collier on Bankruptcy* ¶ 330.04(1)(b)(iii)(15th rev. ed. 2009). This is the approach now codified in 11 U.S.C. § 330(a)(3)(c). *See* 11 U.S.C. § 330(a)(3)(c).

Attorneys seeking fees should not "bunch" or "lump" several tasks or services into one time entry because the Court cannot easily decipher the reasonableness of the time spent on each task. *See In re Poseidon Pools of Am., Inc.*, 180 B.R. 718, 731 (Bankr. E.D.N.Y. 1995). "Courts have refused repeatedly to approve unitemized disbursements for services that are lumped together in a single entry, because such action inhibits the court from estimating the reasonableness of the individual services and their value to the debtor's estate." *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) (citations omitted); *see Poseidon Pools*, 180 B.R. at 731 ("Accordingly, where 'lumping' occurs, courts have denied compensation for the services lumped

13

into a time sheet entry based on the impossibility of determining whether the time spent on the individual services was reasonable.") An applicant's lumping in a time entry does not satisfy its burden under Section 330(a) or Federal Rule of Bankruptcy Procedure 2016(a). *Poseidon Pools,* 180 B.R. at 731.

Here, the Attorney seeks fees in the sum of $440,138.50 for 1,660.9 hours at an hourly rate of $265.00, reimbursement of expenses in the sum of $34,420.81, and additionally seeks a ten percent (10%) bonus for exceptional services in the sum of $44,013.85.

The Court has reviewed the fee application on the basis of an hourly retention. The fee application is in the usual and customary form filed in this District and is supported by the Attorney's description of the services rendered together with copies of his time records contemporaneously maintained reflecting date of service, services performed, and time expended. It is further supported by itemization of expenses for which reimbursement is sought. The Court finds in the main the services performed and the fees sought to constitute actual and necessary services conferring a benefit to the estate. The hourly rate is reasonable. However, the Court, after review, has found several items hereinafter noted to be inappropriate resulting in certain disallowance of fees.

Many of the services performed by the Attorney appear to be ministerial, secretarial, or paralegal in nature and should not be compensated at the Attorney's hourly rates. This in effect has been acknowledged by the Attorney in his application where he notes that all of the services were performed solely by himself without benefit of paralegal assistance or associates or less-experienced attorneys with lower hourly rates. This is unusual in applications before this Court, which always looks to reasonableness and operates by the guidelines that normal secretarial, paralegal, or junior

attorney services should be compensated accordingly – for example, simple correspondence, including filing letters, scheduling of meetings, etc., preparation of basic documents such as notices of motion, subpoenas, etc., and routine document review – should be compensated at a lower hourly rate, if compensated at all. A specific calculation of these services and related time is made difficult in the instant fee application because of the manner in which the Attorney has maintained time. Many of the daily time entries include a variety of services with little detail, commonly known as bunching or lumping, which creates difficulty for the reviewer in determining the length of time spent on each service. Such recording of time is discouraged in this District. By way of example, the time records for 4/17/06 and 3/7/07 are as follows:

> 4/17/06   Review of correspondence from Ken Leiby, Jr., Esq.; review of deposition subpoenas; telephone call to Gary McDermott; preparation of amended certification pursuant to R. 4:5-1; legal research; travel to Livingston to view documents of Mac in possession of Daniels Smart Sharp; telephone call to J. Sywilok, Esq.; review of some of the documents retrieved; travel back to office    7.1
>
> 3/7/07    Review of interrogatories of Rocio Fermin; preparation of modifications to Rocio Fermin Interrogatories; preparation of deposition subpoenas to American Express Co., CNL Bank, BB&T Bank, and Capital One credit card company; review of documents received from Daniels defendants; preparation for deposition of David Skinner of Daniels Sharpsmart, Inc.    10.4

Thus, it is impossible to determine the length of time spent in the review of documents, or the preparation for a deposition, or the preparation of simple subpoenas, or the review of interrogatories, etc. The total time for which the Attorney seeks payment at full hourly rate is

1,660.9 hours. It would appear at least a portion of the time could have been performed more efficiently and less expensively.

In addition, the Attorney makes no reduction for routine travel such as travel to Court or to a deposition. It is customary in Bankruptcy Court fee applications that such travel is compensated at fifty percent (50%) of the normal hourly rate but no deduction is made in this case by the Attorney and because of the lumping of time it is difficult to precisely itemize the time spent on travel, which should be calculated at fifty percent (50%).

As a result, the Court has undertaken to calculate a proper reduction for the secretarial/paralegal/junior attorney type services and travel time. I have concluded that a total of twenty percent (20%) or 332.18 hours is to be disallowed at normal hourly rates. I will allow these hours to be compensated at $100.00 per hour. As indicated, it is difficult to precisely calculate the hours spent but instead of disallowing the fee application in total because of lumping, the Court has attempted a calculation of time which it believes to be conservative yet fair relative to the total fee applied for and services provided. The $100.00 per hour rate strikes a balance for paralegal type services, secretarial services, and travel reduction. In the future, the Attorney is counseled to prepare time records with more specificity and detail as to services rendered and time spent on each service. This disallowance of 332.18 hours at $265.00 per hour amounts to a fee reduction of $88,027.70. This is partially offset by allowing those hours at $100.00 per hour for an award of $33,218.00.

In addition, an element of expense reimbursement must be disallowed. The Attorney has charged for travel from April 2004 to February 2008 calculating 4,222 miles at $ .485 per mile for an expense reimbursement of $2,047.67. Since the Attorney is being compensated for travel, a per-

16

mile expense is not appropriate as this is an element of the Attorney's office overhead and not reimbursable. Therefore, $2,047.67 will be disallowed.

The Attorney has made an application for a ten percent (10%) bonus or enhancement to the fee award. A bonus may, of course, be awarded for extraordinary results or unusual circumstances, but are the exception, rather than the norm. Here, the Court sees no justification for the award of a bonus. In fact, the Trustee has argued the services were far from satisfactory and were not of great benefit to the estate. The Court has found that the Attorney's services did benefit the estate and were a precipitating cause in bringing about the settlement recovery of $935,000. However, that was the Attorney's purpose for retention and he is being adequately compensated by the within fee award. The Court does not feel that a bonus is warranted and that request is denied.

Finally, the Attorney suggests that the within fee award should be paid to him immediately whether or not funds are available to pay others similarly situated based upon some contention that this was his understanding with the Trustee. The Court finds no basis in fact for such an arrangement and, if one had been made by the Trustee and the Attorney, it would not be approved by this Court. The fees awarded herein are administrative costs of the Chapter 7 estate and shall be paid in accordance with the payment priority scheme set forth in the Bankruptcy Code. *See* 11 U.S.C. § 503, 507.

In summary, the Court finds that the retention herein was on an hourly basis with payment contingent upon recovery from the State Court Action. The fee award is as follows:

| | |
|---|---|
| Fee allowed | $385,328.80 |
| Expenses | 32,373.14 |
| Total | $417,701.94 |

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

/s/ *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 24, 2009